UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TAMMY JEAN JONES,

                                                                                                        DECISION AND ORDER

                                Plaintiff,

                                                                                                           18-CV-6901L

                  v.

ANDREW SAUL,
Commissioner of Social Security,

                                Defendant.
_____

      Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

      On February 11, 2014, plaintiff, then forty years old, filed an application for disability insurance benefits, alleging an inability to work since March 30, 2012. (Administrative Transcript, Dkt. #6-2 at 16). Her application was initially denied, and after a video hearing before Administrative Law Judge ("ALJ") Lisa B. Martin, the ALJ issued an unfavorable decision.

      Plaintiff requested review by the Appeals Council, which remanded the matter for a redetermination, based on ALJ Martin's failure to consider an opinion by plaintiff's treating therapist. (Dkt. #6-3 at 121-22). On November 14, 2017, a supplemental video hearing was held before ALJ John P. Ramos. On January 10, 2018, ALJ Ramos issued a decision concluding that plaintiff was not disabled under the Social Security Act. (Dkt. #6-2 at 16-43). That decision

became the final decision of the Commissioner when the Appeals Council denied review on October 19, 2018. (Dkt. #6-2 at 1-3). Plaintiff now appeals.

The plaintiff has moved for remand of the matter (Dkt. #7), and the Commissioner has cross moved (Dkt. #11) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the decision appealed-from is affirmed.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

Initially, the ALJ determined that although plaintiff had claimed an onset date of March 30, 2012, plaintiff had engaged in substantial gainful activity from January 2015 through September 2015, and January 16 through November 2017 (when the supplemental hearing took place). As such, the determination of disability was limited to the period from March 30, 2012 through December 31, 2014, when plaintiff was not engaged in substantial activity.

The ALJ's decision summarizes plaintiff's medical records before, during and after the relevant period. These include treatment records for obesity, lumbar spine disorder status post remote surgery, carpal tunnel syndrome, dominant right wrist injury status post surgery, left knee disorder status post anterior cruciate ligament ("ACL") surgery, bipolar disorder, depressive

2

disorder, and alcohol abuse, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #6-2 at 20).

The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; can maintain attention and concentration for simple tasks; can regularly attend to a routine and maintain a schedule; can relate to an interact with others to the extent necessary to carry out simple tasks; can handle reasonable levels of simple work-related stress in that she can make decisions directly related to the performance of simple work and can handle usual workplace changes and interactions associated with simple work. (Dkt. #6-2 at 24, 58).

When given this RFC as a hypothetical question at the supplemental hearing, vocational expert Linda Voss testified that such an individual could perform the unskilled positions of document preparer, addresser, and table worker. (Dkt. #6-2 at 41, 58-59).

**I.     Treating Physician Opinions**

Plaintiff's primary contention is that the ALJ erred when he declined to grant controlling weight to the opinion of plaintiff's treating psychiatrist, Dr. Tinu Addams ("Addams"), who cosigned an opinion by plaintiff's treating therapist, licensed clinical social worker Linda Riner ("Riner"). That opinion specified that plaintiff's understanding and memory are "limited" due to anxiety, that plaintiff's concentration and persistence are "limited" due to emotional and physical pain, that she is unable to "maintain attendance," that her social interaction skills are limited due to insecurities, and her ability to adapt is "limited" in that change is difficult for her, that plaintiff struggles to take care of herself and is suicidal. With respect to the ability to function in a

work-related setting, the opinion only lists exertional limitations, including a foot injury and wrist injury. (Dkt. #6-7 at 895-901).

It is well-settled that "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). In determining what weight to give a treating physician's opinion, the ALJ must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist. 20 C.F.R. §404.1527(d)[1].

Further, the ALJ must articulate his reasons for assigning the weight that he does accord to a treating physician's opinion. *See Shaw*, 221 F.3d at 134. *See also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). An ALJ's failure to apply the treating physician rule factors and give good reasons for declining to grant controlling weight is typically reversible error. *Id.*, 177 F.3d at 134. "If, however, 'a searching review of the record' assures [the Court] that the substance of the treating physician rule was not traversed,'" and the record otherwise provides "good reasons" for the weight given to the treating physician's opinion, affirmance may be appropriate. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

Here, while the ALJ acknowledged Dr. Addams's and Ms. Riner's status as treating mental health providers throughout the relevant period, the ALJ did not explicitly mention the treating physician rule. Nonetheless, the ALJ set forth several "good reasons" for his decision to grant the opinion "little" weight. Initially, the ALJ noted that the limitations indicated in the opinion with

---

[1] Changes to the Administration's regulations regarding the consideration of opinion evidence eliminate application of the "treating physician rule" for claims filed on or after March 27, 2017. For the purposes of this appeal, however, the prior version of the regulation applies.

4

respect to understanding, memory concentration, persistence, social interaction, and adaptation were "not well-supported given the scant chronically positive objective clinical findings" of record, including Ms. Riner's own examination notes. (Dkt. #6-2 at 37).[2]

This observation was not factually erroneous: as the ALJ discussed, plaintiff's mental health treatment records during the relevant period reflected generally consistent symptoms, largely controlled with prescription medication and weekly counseling, with no need for psychiatric hospitalizations or inpatient treatment. (Dkt. #6-2 at 27). With respect to Ms. Riner's treatment notes (Dkt. #6-7 at 589-893, Dkt. #6-8 at 973-1058), the Court observes that the notes are simply handwritten summaries of the personal concerns the plaintiff related to Ms. Riner at each weekly session. *See e.g.*, Dkt. #6-7 at 890 (Entire progress note for plaintiff's May 21, 2009 visit with Ms. Riner: "Journaling – working on improving eating and sleeping and exercise. Discussed mood and food group, vitamin and omega 3 fish oil. Will check with her doctor. Applied for a promotion – more money and more responsibility. 3 more paychecks – worried about money for the summer. Husband has an addiction to gambling . . . writer encouraged couples counseling. Relationship a stress for Tammy."); Dkt. #6-7 at 589 (Entire progress note for plaintiff's March 11, 2014 visit with Ms. Riner: "Stanley Law for SS. Applying for SSD. Sees Dr. [illegible] Thurs. See Dr. Adam [sic] Tues. for med management. Increased pain arm and back and knee. Husband has no money for food. Spends it on alcohol and gambling. Yelled at her "idiot" because she is not able to work and has no money. Working with Lori Waters DV and encouraged to go to DSS for help").

---

[2] Although Dr. Addams cosigned Ms. Riner's opinion, the record does not contain any treatment notes authored by him. The cosigned opinion specifies that Ms. Riner is plaintiff's counselor, while Dr. Addams is responsible only for "med[ication] management." (Dkt. #6-7 at 895, 901, 902). It is unclear from the record whether, or with what frequency, Dr. Addams personally examined the plaintiff.

Ms. Riner's treatment notes do not contain any objective clinical findings or observations concerning how she presented, nor do they purport to assess any area of work-related mental functioning (e.g., mood, affect, judgment, insight, concentration) whatsoever. As such, it does not appear that the opinion authored by Ms. Riner and cosigned by Dr. Addams, which was rendered two years after plaintiff left their care, could have been based on records of prior objective findings, since the treatment notes contained none. Rather, the opinions appear to have been, as the ALJ observed, based exclusively upon "the claimant's subjective self-reports of symptoms and functional limitations, such as Patient Health Questionnaires indicating severe depression or anxiety." (Dkt. #6-2 at 37). Indeed, in some respects the cosigned opinion describes limitations greater than those suggested by the treatment notes and questionnaires. During the relevant period (March 30, 2012 through December 31, 2014), plaintiff maintained regular attendance at her weekly therapy sessions, with few cancellations. Her contemporaneous self-reports described mild or moderate depression the overwhelming majority of the time, although she did rate her depression in terms equating to "severe" on several occasions, particularly during the period from March 2014 through September 2014, when plaintiff reported crippling stress due to financial instability, an abusive partner, fear of making a mistake at her part-time jobs, and coaching a cheerleading squad. Notwithstanding the opinion's description of plaintiff as suicidal, plaintiff generally denied thoughts of self-harm or suicide. (Dkt. #6-7 at 604, 606, 613, 617, 623, 626, 629, 644, 647, 651, 658, 661, 675, 684, 707, 744, 795, 975, 984, 986, 989, 992, 993, 997, 1017, 1038, 1044, 1059).

As the ALJ noted, the level of limitation described by Dr. Addams and Ms. Riner[3] was also inconsistent with plaintiff's self-reported activities of daily living during the relevant period,

---

[3] Ms. Riner also submitted a more specific mental RFC assessment dated January 4, 2016: ALJ Martin's failure to mention or weigh this opinion was the cause of the Appeals Council's initial remand. (Dkt. #6-7 at 969-71). That

which included childcare, pet care, going to the gym, attending exercise classes, cooking, light housework, coaching cheerleading, working part-time, attending online courses, and attending scheduled medical appointments and therapy. (Dkt. #6-2 at 28-29).

In short, while a treating physician's opinion is entitled to controlling weight where it is "well supported by medical findings," the opinion by Dr. Addams and Ms. Riner is woefully lacking in such support, and the reasons given by the ALJ for declining to afford it controlling weight – including the lack of clinical objective evidentiary support, and inconsistency with the record as a whole and with plaintiff's self-reported activities of daily living – provided a sufficient basis for giving the opinion "little" weight. Notwithstanding the ALJ's failure to explicitly apply the treating physician rule factors, the Court finds that the "substance of the treating physician rule was not traversed," and that the ALJ gave "good reasons" for declining to give Dr. Addams's opinion controlling weight. *Halloran*, 362 F.3d at 32.

The Court also observes that the ALJ's mental RFC findings were otherwise supported by substantial evidence of record. Such evidence included the opinion of consulting psychologist Dr. Sara Long, who examined plaintiff on April 15, 2014 and rendered the *only* objective, in-person clinical assessment of plaintiff's mental RFC contained in the record for the period under review. (Dkt. #6-7 at 902-905). The ALJ gave Dr. Long's opinion "significant" weight, and incorporated all of the limitations it described into his RFC finding. (Dkt. #6-2 at 35).

---

assessment, which was not cosigned by a treating physician and thus was not entitled to application of the treating physician rule, opined that plaintiff was "unable to meet competitive standards" in the areas of memory, understanding simple instructions, working with or in proximity to others, performing at a consistent pace, accepting instructions and responding to criticism, getting along with others, dealing with normal work stress, and using public transportation. The ALJ gave "little" weight to this assessment, citing the same reasons he gave for giving "little" weight to the opinion cosigned by Dr. Addams. For the reasons discussed above, the Court finds that the ALJ's assessment and weighing of Ms. Riner's January 4, 2016 RFC assessment was not erroneous.

In summary, I find that the weight given by the ALJ to the medical opinions of record was appropriate, and that the ALJ's decision is supported by substantial evidence, and is not the product of legal error.

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision and remand the matter (Dkt. #7) is denied, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #11) is granted. The ALJ's decision is affirmed in all respects, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
March 18, 2020.